## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:20-CR-157 |
| | : | |
| MATTHEW PETTENGILL | : | Honorable T.S. Ellis, III |
| *Defendant.* | : | |
| | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING AND ASSESSMENT OF 18 U.S.C. § 3553(a) SENTENCING FACTORS

COMES NOW, Matthew Pettengill, by and through counsel, and provides the Court with his position regarding the sentencing factors and with this Motion regarding the Court's obligation to impose a sentencing "sufficient, but not greater than necessary to comply" with the factors found in 18 U.S.C. § 3553(a). Mr. Pettengill agrees that the Guideline Range is properly calculated as 151-188 months. But for the reasons discussed below, an appropriate sentence requires no more than the mandatory minimum term of 60 months' custody.

### Background

On October 8, 2020, Matthew Pettengill pleaded guilty to one-count of transporting child pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(1). [Dkt. No. 7.] Pursuant to applicable law, the Court remanded Mr. Pettengill to the custody of the U.S. Marshals Service following the acceptance of his plea. Mr. Pettengill has remained confined in the Alexandria Adult Detention Center since that date.

Matthew Pettengill is a 21-year-old young man, and the beloved son of Eric and Elizabeth Pettengill. He was 19-years-old at the time of the charged conduct. Prior to pleading guilty in front of this Court, he led a simple life, going to school, working various jobs, and beginning to find his way in the world. As he will tell the Court, he struggled to mature and fit

in among his peers, but he worked hard and tried to serve his family and community.

Mr. Pettengill has gone to great lengths to identify and address the causes and actions that bring him before the Court. Among other rehabilitative efforts, he worked with Dr. Frederick Berlin, from the Johns Hopkins Sex and Gender Clinic, Department of Psychiatry and Behavioral Sciences, in Baltimore, Maryland. *See* Presentence Investigation Report ("PSR") [Dkt. No. 15] at ¶ 61. Dr. Berlin diagnosed Mr. Pettengill with Other Specified Paraphilic Disorder and Adjustment Disorder. *Id.* These developmental challenges combined with the challenges of youth and accessibility, leading Mr. Pettengill to access illicit images on his cell phone when he was as young as 15 years old.

These images depicted "similarly aged females." *Id.* at ¶ 62. Though with time and an inability to handle his developmental challenges, he veered beyond these images to more illicit and "darker" images. *Id.* at ¶ 63. He knew that he was wrong, but he found himself returning to this behavior. *Id.*

Since the initial law enforcement contact in this case, Mr. Pettengill has actively, for the first time, sought to address the underlying conditions and weaknesses that led him down this path. In addition to the diagnosis and treatment afforded by Dr. Berlin's office, he received counseling from Major Sean Levine, a U.S. Army Chaplain (Attachment A), and Licensed Professional Counselor Mary Weaver (Attachment B) of the National Institute for the Study, Prevention, and Treatment of Sexual Trauma. Their letters confirm that he was an eager and willing participant in treatment. And through this work with Mr. Pettengill, they support the conclusion that he is not a threat to reoffend and that society would be best served if Mr. Pettengill received the continued counseling and treatment that are imperative for his rehabilitation—a level of counseling and treatment that he cannot effectively receive while

2

incarcerated.  Mr. Pettengill was further evaluated by Dr. Zachary Cordner of the John's Hopkins University Sex and Gender Clinic, as reported in paragraphs 61-63 of the PSR.

While these professional diagnoses coupled with counseling and treatment will help rehabilitate Mr. Pettengill, the love and support of his family will ensure that he returns as a contributing, law-abiding member of society.  His life will be forever changed by his actions, but he stands prepared to face the challenges head on.  He takes full responsibility for his crime. From the first contact with law enforcement he has cooperated, admitted his wrongs, and taken responsibility.  He now seeks to bear that responsibility through his confinement and back into society as a contributing member.

<u>**Argument**</u>

A.   <u>**The Court shall impose a sentence sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).**</u>

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)'s mandates.  These include considering the "nature and circumstances of the offense and the history and characteristics of the defendant," reflecting the seriousness of the offense, affording adequate deterrence, protecting the public, and providing necessary rehabilitation to the defendant.  18 U.S.C. § 3553(a)(1-2).

In *United States v. Booker*, 125 S.Ct. 738 (2005), the United States Supreme Court restored to sentencing judges the power to use discretion in determining appropriate sentences. "In the wake of *Booker*, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the sentencing guidelines.  Nevertheless, a sentencing court is still required to 'consult [the] guidelines and take them into account when sentencing.'"  *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 125 S.Ct. at 767).  The Fourth Circuit prescribes that in light of *Booker*, "a district court shall first calculate (after making the

appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* (citation omitted).

Mr. Pettengill pleaded guilty to a single count of 18 U.S.C. § 2252(a)(1), Transportation of Child Pornography. The Guidelines call for 151-188 months' custody. The statute provides a mandatory minimum sentence of 5 years and a maximum sentence of 20 years' imprisonment, in addition to possible fines, restitution, special assessments, and supervised release. After considering the sentencing factors discussed below, there is no sentencing principle that would be served by any additional time beyond the statutory mandatory minimum term of imprisonment.

**B.**     **18 U.S.C. § 3553(a) Factors to Consider in Sentencing.**

**1.**     **Nature and Circumstances of the Offense.**

Mr. Pettengill illegally transported images of child pornography in violation of 18 U.S.C. § 2252(a)(1). Mr. Pettengill understands that child pornography is a vicious part of the abuse and exploitation of minors. He has reviewed the victim impact statements and he fully appreciates how his actions have further harmed and perpetuated the victimization of innocent children. He admits that there is no excuse for his conduct and he takes full responsibility. The nature of the offense is further reflected in the Criminal Information, the Stipulation of Facts, and the PSR.

It should be noted, however, that the circumstances of Mr. Pettengill's offense began when he himself was a child; are limited primarily to receipt of material; and include only limited transportation. Mr. Pettengill had a hard time forming healthy relations which similarly-aged peers, and instead sought out solitary hobbies and online relationships, which devolved into

4

the behaviors subject to this conviction.  PSR ¶ at 56, 63.  Mr. Pettengill is not a "contact offender," and he had no role in producing any such content.  This is an important distinction that separates Mr. Pettengill from offenders who have greater culpability and who pose a greater danger to the community—in addition to a greater risk of recidivism.

Unlike other offenders who engage in similar behaviors, Mr. Pettengill has shown guilt and remorse for his actions, and has not engaged in any defenses or justifications of them. Chaplain Levine writes of Mr. Pettengill's "shame" and "sorrow."  Attachment A.  Additionally, his immediate cooperation with law enforcement and his detailed description of his interests, acts, and crimes are indicative of an honest and respectful young man, rather than a cunning criminal.

## 2.    <u>History and Characteristics of the Defendant</u>.

Mr. Pettengill is a young man with no criminal history.  While he has a loving and supportive family, he was forced to relocate often throughout this childhood due to his father's active military service.  PSR at ¶ 65.  He did not spend much time with either of his parents as he developed, due to their busy work commitments.  Making and retaining friends was difficult due his frequent moves.  He attended three high schools, making meaningful relationships all but impossible.  *Id.*  His father writes of his absences:

> Unfortunately I missed the majority of his childhood due to deployments and other various military obligations and because of this I wasn't always able to be as supportive as a father should be.  Matthew was always there for his mother and sisters while I was away which put a lot of stress on him at too early an age.

Attachment C, Eric Pettengill Letter, January 31, 2021.

Instead, Mr. Pettengill turned inward, struggling with the normal challenges of youth, while also struggling alone with Adjustment Disorder, Other Specified Paraphilic Disorder, and "maladaptive pornography use."  PSR at ¶ 61; *see also* Attachment B.  Without the wherewithal

to adapt and address these conditions—as he has since learned from his treatment providers—he sunk into his illegal conduct.

### a.   His True Character.

Mr. Pettengill is best described as shy, introvert, who his family has relied on as a committed and dependable member of the family.  While he did not develop a full and healthy social network growing up, he instead found an outlet through technology—robotics, video games, and the internet.  It was on the internet that Mr. Pettengill first began to explore sexual content and sexuality generally.  And it was there that his typical curiosities were confronted with the deviant content subject to this charge.

Mr. Pettengill, still young now, was a child when he first encountered this content.  But the internet provided social contact he had not found elsewhere, and though his behavior was wrong, he continued, guilt ridden.  He lacked the social or familial network, or simply the personal maturity, to effectively address his maladaptive behaviors and prevent his illicit behavior.

This is a notable aspect of Mr. Pettengill's offense: he makes no attempts at justification, does not downplay the moral culpability and harmfulness of his actions, and does not shy away from accepting guilt.  Mr. Pettengill never exhibited any behaviors of violence or sadism.  He never expressed any desire to hurt anybody or act in anyway congruent with the content subject to this charge.

While struggling with depression and suicidal ideations, Mr. Pettengill has responded effectively to treatment and counseling.  His active and productive participation in counseling and treatment speak well of his understanding that what he has done is unacceptable and harmful to his victims, a fact that he did not truly appreciate until forced to learn more through this case.

He has shown a genuine desire to make sure that it does, in fact, never occur again.

      **b.**      **Age and Physical Health.**

Mr. Pettengill is 21 years old; a young 21 years old, shielded from the maturity of experiences that some at his age have gained.  And he was only 19 years old at the time of the charged conduct, younger still at the time he began the behavior subject to this charge.  Rather than learn and grow in education and experience through employment or college over the upcoming years, Mr. Pettengill's existence will be reduced to his confinement, and the shame that he will bear.

As a young man, this represents a significant portion of Mr. Pettengill's life.  As he continues to spend more time in prison, he will fall further behind his peers socially, educationally, and professionally.  Chaplain Levine says, "Matthew inhabits a key developmental 'season' with which extended incarceration could interfere profoundly." Attachment A.

      **3.**      **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

The nature and circumstances of the offense and of Mr. Pettengill, as discussed above, must be balanced with imposing a sentence that reflects the seriousness of this offense, respects the rule of law, and provides a just punishment.  While reflecting the seriousness of the offense and a respect for the rule of law, the Court should consider, among other factors, the outsized impact that this conviction and any sentence will have on Mr. Pettengill due to his young age.  60 months of confinement is a serious penalty that adequately addresses the conduct at issue.

This conclusion is reinforced by the felony conviction, reporting requirements, monetary penalties, supervised release, and restitution that will follow him even after his time in custody.

4825-5634-1464, v. 1

That is, the need for the sentence to reflect the seriousness of the offense is not limited to his active period of incarceration; rather, any sentence here and the consequences therefrom will effectively punish Mr. Pettengill for the remainder of his life.

**4.   To Afford Adequate Deterrence to Criminal Conduct.**

The shame and pain that he has caused to his family, as he will tell the Court, has deterred Mr. Pettengill beyond any sentence the Court will impose.  And every day—during the height of COVID-19 lock-downs in the local facility—Mr. Pettengill has sat, alone, to think about his actions and the consequences that are only now beginning.

In addition to this personal shame and sorrow, his professional treatment as detailed by Mary Weaver, the counseling that Chaplain Levine has provided, and the mental health counseling that he is continuing to pursue are unearthing the roots of his actions, instilling effective deterrence in Mr. Pettengill every day.

**5.     To Protect the Public from Further Crimes of the Defendant.**

Beyond the actual confinement, registration on the Sex Offender Registry and any post-release supervision will further serve as protections for society, and deterrence against any future conduct of this sort by Mr. Pettengill.  Other than this instant charge, Mr. Pettengill has no criminal history, and has shown no propensity toward criminality or lawlessness.

 Facing the realities of his actions and their harms, Mr. Pettengill has experienced, and acted upon, suicidal ideations.  PSR at ¶ 11.  The gravity of his past choices is not lost on him. Since the investigation into Mr. Pettengill's behaviors, until his incarceration, Mr. Pettengill engaged productively in Pastoral Counseling and Psychotherapy to address the root causes with Chaplain Levine and Ms. Weaver.  These sessions were fruitful, and Mr. Pettengill's participation was not merely willing, but active and engaging. Attachment A-B.

The Government argues, on the other hand, that Mr. Pettengill's offenses and actions are indicative of an increased risk of recidivism and risk to society, and that additional incarceration is needed to protect society.  Position of the United States With Respect to Sentencing [Dkt. No. 16] at 9.  But the professionals who have worked directly with Mr. Pettengill disagree.  Ms. Weaver writes, "[a]t this time, due to Matt's therapeutic progress, coping skills development, understanding of the severity of his crime, and commitment to continued mental health care, I feel Matt is a minimal risk to himself and the community."  Attachment B.

Chaplain Levine echoes that conclusion in his letter to the Court:

> [A]ny time in jail in excess of the minimum required could erect substantial barriers to that growth, and as a priest and counselor, I have concerns for Matthew's continued rehabilitation and maturation; the keys to his future existence on this planet and his potential to contribute positively to society over the course of an adult life that has just begun.

Attachment A.  The specific nature of Mr. Pettengill's disorder, along with his remorse for his actions and productive engagement in counseling and therapy demonstrate that he is a low risk for future offenses.

**6.      To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner.**

To aid in Mr. Pettengill's continued rehabilitation, he is respectfully requesting that the Court request that the Federal Bureau of Prisons evaluate him for placement at Federal Correctional Complex (FCC) Petersburg.  In addition to placing him within a reasonable distance of his family, FCC Petersburg has an active Sex Offender Management Program that will further bolster Mr. Pettengill's rehabilitative steps, while providing him with the safety needed to develop and work toward a meaningful re-entry plan for his eventual release.

9

7.     **The Sentencing Guidelines and a Variance**.

Mr. Pettengill agrees that the Sentencing Guidelines are correctly calculated.  While this is the correct Guideline calculation, a sentence in this range would not be appropriate in light of the sentencing factors discussed above.

Moreover, in a December 2012 report to Congress, the United States Sentencing Commission examined the significant increase in below-guidelines sentences for non-production child pornography offenses.  *See* U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012).

The Commission asked whether in today's high-tech world where child pornography is readily accessible and is typically downloaded in large volumes that can include a wide variety of images, the federal sentencing scheme for child pornography failed to appropriately distinguish among offenders based on their culpability.  *Id.* at 323.  The Commission also noted that some offenders view child pornography for reasons unrelated to sex, such as "avoidance of stress or dissatisfaction with life."  *Id.* at 79.  Ultimately the Commission concluded that the guidelines place "a disproportionate emphasis on outdated measure of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness."  *Id.* at 321.

This Report was followed in December 2020 by subsequent Report, analyzing the role of the sentencing guidelines in federal criminal cases from 2005-2017.  *See* U.S Sent'g Comm'n, Report to the Congress: The Influence of the Guidelines on Federal Sentencing (2020). That report found, as a 'Key Finding' that "The influence of the guidelines continued to vary substantially depending on the type of offense throughout the [period after the 2012 *Booker* Report]. As indicated by the difference between the average guideline minimum and average

10

sentence imposed, the guidelines continued to exert a … a weakening influence in non-production child pornography offenses and career offender cases." *Id*. at 7.

These questions and considerations are particularly relevant in this case.  Many of the Guideline enhancements are the result of commonplace technologic capabilities that allowed him to download a larger volume of images than he ever would have intended.  And the nature of the images was therefore far more diverse—and often of younger individuals and situations involving violence or other sadistic material—than they would have been otherwise.  That is, the accessibility and connectivity of his tools uniquely enhance the apparent gravity of his crime in a way that would not be possible absent such ready technologic access.  Because the Guidelines do not accurately portray his criminality, a variance is appropriate.

## **CONCLUSION**

Because the principles of sentencing require no more than the mandatory-minimum term of incarceration, Defendant respectfully requests that the Court order no more than 60 months' custody.

Respectfully submitted,

Matthew Pettengill
By Counsel

_____/s/_____
Samuel C. Moore
Virginia State Bar No. 73233
Law Office of Samuel C. Moore, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: scmoore@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for the Defendant*

4825-5634-1464, v. 1

**Attachments**

A. Chaplain Major Sean Levine, U.S. Army, Letter
B. LGPC Mary Catherine Weaver, Letter
C. SFC Eric Pettengill, Letter

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2021, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing

(NEF) to the following filing user:

William G. Clayman
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Email: William.G.Clayman@usdoj.gov

_____/s/_____
Samuel C. Moore
Virginia Bar No. 73233
Law Office of Samuel C. Moore
526 King St., Suite 506
Alexandria, VA 22314
Email: scmoore@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234

4825-5634-1464, v. 1